**In re SALEM MORTGAGE COMPANY, Fidelity Fund, Inc., Fidelity Securities Corp., Nationwide Mortgage Co., Debtors.**

**Frank J. KELLEY, Attorney General of the State of Michigan, Plaintiff,**

**v.**

**SALEM MORTGAGE CO., et al., Defendants.**

**Bankruptcy Nos. 83–01607–G, 83–01610–G, 83–01611–G and 83–01612–G. Adv. No. 83–0694–G.**

United States Bankruptcy Court, E.D. Michigan, S.D.

Nov. 17, 1983.

Robert S. Hertzberg, Birmingham, Mich., Luis Fernandez and Frederick Hoffecker, Asst. Attys. Gen., Consumer Protection Div. Dept. of Atty. Gen. Lansing, Mich., Arnold Schafer, Birmingham, Mich., Robert Fineman, Detroit, Mich., for proponents.

Irwin Alterman, Southfield, Mich., for debtor-proponent.

John Anderson, Birmingham, Mich., for trustee.

Clark D. Cunningham and Louis Lessem, Mich. Legal Services, Detroit, Mich., for objectors Pustelak and Soto.

Mark Magidson and Merry Rosenberg, Legal Assistance of St. Clair County, Port Huron, Mich., for objectors Tucker, DeBonville, et al.

Emily Kurrasch, Legal Services of Southeastern Mich., Jackson, Mich., for objectors Nodine, et al.

Michaek Chielens, Legal Aid of Western Mich., Grand Rapids, Mich., for objectors Peter, et. al.

## PROPOSED ORDER APPROVING CLASS CERTIFICATION, SETTLEMENT OF CLASS ACTION LITIGATION, AND ENTRY OF CONSENT JUDGMENT

RAY REYNOLDS GRAVES, Bankruptcy Judge.

This adversary proceeding presents the parties, the community, and this Court with a cornucopia of evils demonstrating how questionable business practices may threaten the financial security of homeowners, borrowers, and investors. The individuals effected by the business operation known as Salem Mortgage may or may not have valid and meritorious claims and defenses against the Debtors or, as in the mortgagor mortgagee relationship, against each other. In an effort to bring about an efficient, expeditious, and orderly resolution of possible claims and defenses, the Attorney General of Michigan has proposed the certification of a class action, a settlement of the class action, and a Consent Judgment resolving the issues raised in this adversary proceeding against the Debtor Defendants, and others, in this Court. The proposal advanced by the attorney general creates proposed classes of borrower-plaintiffs and investor-defendants. The Attorney General requests that these classes be certified as proposed, and the settlement of the class action claims be approved by this Court, and a proposed Consent Judgment entered. These proceedings will be submitted as proposed findings of fact and conclusions of law to be reviewed by the United States District Court for the Eastern District of Michigan, under the authority of Interim Rule, as adopted by the United States Court of Appeals for the Sixth Circuit in *White Motor Corp., v. Citibank, N.A.* (1983) 704 F.2d 254, 265. This Court, through the within Order, sets forth the proposed find-

ings of fact and conclusions of law for the certification of the class action, approval of the settlement, and entry of the Consent Judgment for review and approval by the United States District Court.

## STATEMENT OF THE CASE

This cause comes before the Court upon a motion by the ATTORNEY GENERAL OF THE STATE OF MICHIGAN and representatives of mortgagors described as first, incorporated second, and wrap-around mortgagors requesting this Court's certification of proposed classes of plaintiffs and defendants, approval of the stipulated settlement resolving the adversary proceeding, and the entry of the proposed Consent Judgment. The causes of action arose out of the operations of the Salem Mortgage Company, Debtor, and its affiliated companies, Fidelity Fund Inc., Fidelity Securities Corporation, and Nationwide Mortgage Company who allegedly held themselves out to the public as mortgage brokers, or investment vehicles. Individuals, groups, corporations, or associations, acting as investors, deposited substantial amounts of money with one or more of the Debtor corporations and reasonably anticipated a return on their investments. Individual borrowers, many desperately needing emergency cash for personal needs, contacted the Salem Mortgage Company in response to publicly circulated newspaper advertisements and applied to Salem to borrow funds. Salem, holding itself out as a mortgage broker, offered to loan money to individual borrowers under certain terms and conditions. In each case the loans were secured by a first, second, or wrap-around mortgage on the borrower's home. (The second mortgage transactions were loans to corporations formed by the borrower. The loan was made directly to the corporation and secured by a second mortgage on the borrower's home.)

The investors ultimately became the mortgagees. Each mortgagor represented in this adversary proceeding had a corresponding investor as a mortgagee. These transactions give rise to the possibility of numerous causes of action which the objectors to this proposed settlement claim have not been properly analyzed or resolved in the attorney general's proposed settlement.

Plaintiff class members have possible claims for fraud, deceit, usury, breach of fiduciary duty, violations of the Michigan Consumer Protection Act (M.C.P.A.) M.C.L.A. § 445.901 *et seq.*, the Consumer Credit Protection Act (together with the Truth and Lending Regulations) 15 U.S.C. § 1601 *et seq.*, misappropriation of escrow funds and causes of action for damages.

The Court began a hearing on the objections to the settlement on Thursday, October 6, 1983, and continued hearings on nonconsecutive days, evenings, and Saturdays until the hearings were concluded on November 1, 1983. Oral arguments were presented on November 3, 1983. The parties were directed to file proposed findings of fact and conclusions of law no later than November 14, 1983, in order to afford this Court the opportunity to give immediate consideration to this case and announce a decision on November 16, 1983. (Under separate Order, this Court has rejected the late and untimely filing of the objectors' proposed findings of fact and conclusions of law; however this Court is bound to consider all of the arguments, testimony, and exhibits presented in the record of these proceedings.)

## PROPOSED FINDINGS OF FACT

On March 30, 1983, the Debtor Defendants Salem, Fidelity Fund, Fidelity Securities, and Nationwide filed separate voluntary petitions under Chapter 11 of the United States Bankruptcy Code (Bankruptcy Reform Act of 1978). Thomas J. Barrow was appointed Trustee for all four Debtors after this Court entered an Order Consolidating the Debtors for purposes of administration. Frank J. Kelley, the Attorney General of the State of Michigan, filed the within adversary proceeding under the Michigan Consumer Protection Act (MCPA) M.C.L.A. § 445.901 *et seq.* on April 11, 1983. The Attorney General also filed a motion to certify seven plaintiff subclasses with him-

self as the sole class representative for each class. The class certification motion was heard, in part, by this Court on May 3, 1983, and adjourned after preliminary arguments. It was represented on the record that the Attorney General, the trustee and the Salem defendants met and entered into settlement negotiations on both the class certification motion and the merits of the claims raised in the Attorney General's complaint.

On May 23, 1983, a stipulation for temporary class certification and a proposed final Consent Judgment was presented to the Court. An amended stipulation was filed on June 13, 1983. By order of the Court on June 14, 1983, the proposed settlement and Consent Judgment was published in newspapers of general circulation on five separate business days: the *Detroit Free Press; Detroit News; Macomb Daily; Flint Journal; Saginaw News; Grand Rapids Press; Kalamazoo Gazette; Jackson Citizen Patriot; The Mining Journal;* and *The Michigan Chronicle.* The notice published in newspapers advised readers of the terms and conditions of the proposed settlement and how they could decline to be bound by the proposed class action by notifying the Clerk of the United States Bankruptcy Court. This Court set August 17, 1983, as the date for the hearing on certification of the class and approval of the proposed settlement. The August 17, 1983, hearing was adjourned to September 15, 1983, at the request of the Michigan Attorney General to afford additional time to give notice to first mortgagors. The adjourned date of September 15, 1983, for the hearing on the proposed settlement and objections to same was continued to October 6, 1983, in order to afford the objectors an opportunity to present objections after this Court granted the objectors' motion to intervene. Following opening arguments on October 6, 1983, this Court took testimony in support of the proposed settlement and Consent Judgment and in opposition to same.

The Court also finds the facts as follows:

(1) There are approximately 2,175 first mortgages, 332 incorporated second mortgages, and 52 wrap-around mortgages.

(2) The mortgages are held as follows:

  (a) First mortgages are held by approximately 625 investors (mortgagees.) (2,175 mortgagors).

  (b) incorporated second mortgages are held by 54 investors, (mortgagees) (332 mortgagors).

  (c) wrap-around mortgages are held by 22 investors (mortgagees) (52 mortgagors).

(3) The properties securing all of the mortgages are located in a land area covering the lower two thirds of the lower peninsular of the State of Michigan.

(4) The first mortgages were closed in the following manner:

  (a) The borrower signed and was given a Broker's Agreement purporting to engage Salem Mortgage Company as the borrower's mortgage broker, in exchange for a broker's fee. The broker then secured a lender for the borrower.

  (b) The borrower signed a promisory note to a lender which was usually identified as either Roland A. Benge and Company or Federation Mortgage Company for an amount equal to the monies actually advanced to the borrower, a broker's fee paid to Salem, and closing costs, without identifying its components.

  (c) Until late 1982 the borrower signed and was given two Federal Truth and Lending disclosure statement, one from Salem and one from the identified lender. The Salem statement identified the broker's fee paid to Salem as a Mortgage Brokerage Fee, but did not include it in the disclosed amount Financed by the borrower. This Salem statement did include the broker's fee in the computation of finance charges in arriving at the Annual Percentage Rate. The lender's statement did not identify the broker's fee paid to Salem as a mortgage brokerage fee, but instead included

this amount in the disclosed Amount Financed by the borrower. This amount was included in the finance charge for computation of the Annual Percentage Rate. Late in 1982 the borrower signed and was given only one Federal Truth and Lending disclosure statement on behalf of the identified lender disclosing the broker's fee paid to Salem as a mortgage brokerage fee and not including it in the disclosed amount financed by the borrower. This broker's fee was also *included* in the disclosed finance charges used to compute the Annual Percentage Rate.

(5) The borrower signed and was provided a closing statement showing the amount of the closing costs and the amount of the broker's fee paid to Salem. The borrower also signed and was given a red and black, large, bold lettered statement showing the amount of the broker's fee paid to Salem. The borrower was also required to write on this statement, in his own handwriting an acknowledgement that he, as borrower, was agreeing to pay the amount of the broker's fee. The borrower signed and was given a mortgage document in which the borrower pledged as security his personal residence. As a matter of business routine agents of Salem Mortgage made tape recordings of the closings and asked the borrower to acknowledge in the tape recording that they knew a broker's fee was being paid. The borrower was also given an unsigned notice of opportunity to rescind.

(6) The objectors' testified that the closing statements, documents, and loan agreements were presented in rapid fashion, too quickly to be read and understood. It appears from the objectors' testimony adduced at trial that the borrowers were not compelled to sign the agreement. Each objector testified that he or she entered into the agreement because of individual economic pressures from strained personal finances.[1]

(7) In the case of first mortgages, the Court also finds that the mortgages were subsequently assigned to an investor, Roland A. Benge & Company which was not identified as the lender in any loan transacted within one year prior to the filing of the within adversary proceeding. Salem Mortgage was the only defendant which at any time purported to enter into a fiduciary relationship with the borrower.

(8) The borrowers were unable to obtain a loan through any lending entity other than that arranged by Salem. Borrowers both in support and in opposition to the settlement testified that they had a desperate need for the money and could not secure a loan from any other source.

(9) It appears from the testimony that the borrowers are unable to immediately repay the entire amount of monies actually received from the Salem arranged loan. Roland A. Benge & Company and Federation Mortgage Company appeared to have assets of approximately 800,000 and 100,000 respectively.

(10) There is an uncollected judgment by the trustee against Joseph Steingold in excess of $2,000,000.

(11) Incorporated second mortgages were closed in the following manner:

   (a) The borrower was required to form a corporation to obtain the loan.

   (b) the interest rate on the note was always in excess of 7%.

(12) Wrap-around mortgages were closed in the following manner:

   (a) the interest rate on the note was always in excess of 7% even if the broker's fee was not included in the finance charges.

(13) The Attorney General of Michigan is charged with enforcing the laws of this state and does not have any interest which conflict with the absent members of any of the classes. United States District Judge Robert E. DeMascio has found in his Order of August 1, 1983, entered in this adversary proceeding, that the Attor-

---

1. As the only incorporated second mortgagor objector *Charles Bonnici* said, "I was being taken, and I knew I was being taken. But I needed the money."

ney General of Michigan has been diligent in intervening in various state court actions involving these Chapter 11 debtors.

(14) The Attorney General has demonstrated to this Court that he has the interest, resources, experience, knowledge, expertise, and public responsibility to pursue this class action as a representative of the individual class-plaintiffs. The Attorney General's representation includes his experiences in the Chapter 11 proceedings in *Remvest* and other similar mortgage lending operations. While not personally a claimant, the Attorney General is an adequate class representative for the interests of those who are proposed as a plaintiff-class. Without the participation of the Attorney General of Michigan, the individual plaiantiffs would be left to pursue remedies through private counsel.

(15) The Defendant class representatives are in the same posture as absent class members. Each Defendant class representative has a personal stake in the outcome of this litigation and is not seeking nor able to recover a better result for the individual interest different than the recovery that is possible for other members of the class. The interests of each class representative are compatible with the interests of the absent class members.

(16) Tony Scherschun is not disqualified as a class representative of the first mortgagor investor class merely because she was and still is an employee of Salem Mortgage. Mrs. Scherschun testified that her investment in the Salem Mortgage companies represented "all the money I've got in the world. I'm not going to let it go down the drain ... my kids and I depend on it ... I'm divorced with two daughters doing the best I can and I need that money." Mrs. Scherschun's interest in her economic survival, the future of her children, and the protection of her investment is similar to the interests of absent investors in the class she represents.

(17) Defendant class representatives, Antonio Foglia, for the incorporated second mortgagees, and Ernest Pippin, for the wrap-around mortgagees, are also representative of the interests of the absent members of the class. Neither Mr. Foglia nor Mr. Pippin are advancing a cause that gives them individually a greater benefit than any other member of the class they purport to represent. Each of their interests are compatible with the interest of the classes they represent.

(18) Through education, training, experience, and depth of participation in similar cases on behalf of the Attorney General of the State of Michigan, Luis Fernandez, Frederick H. Hoffecker, and Robert S. Hertzberg have the resources, interests, and depth of experience as members of the Bar to provide adequate representation to the interest of the separate classes of borrowers. The proposed settlement was negotiated in good faith and at arms length for each plaintiff subclass. No class was advantaged at the expense of another class through the common representation of Messrs. Fernandez, Hoffecker, and Hertzberg.

(19) Common questions of law and fact predominate over all other issues and claims in this litigation:

(a) each individual, whether a first mortgagor, incorporated second mortgagor, or a wrap-around mortgagor has a possible claim for violations of the Michigan Consumer Protection Act, the Consumer Credit Protection Act, *supra,* fraud, deceit, misrepresentation, misappropriation of escrow funds, and breach of fiduciary duty.

(b) Each Defendant class has the possible defense of lack of reliance by the borrower, full disclosure and adequate information to the borrower, holder in due course defense, right of setoff should a borrower rescind, and the right to proceed with foreclosure under state law for possible nonpayment of mortgage principle and interest.

(20) Through newspaper publication and individual mailing from the office of the Attorney General of Michigan, borrowers and investors in each of the proposed

classes have received the widest possible notice. Despite the need for amendments, corrections, and extensions of time, all parties in interest have had ample notice of their right to participate in the proposed settlement or decline to participate and pursue their remedies individually.

(21) In the first mortgagor class 40 borrowers have opted out of the class and 28 investors have declined to participate, leaving approximately 88% of all first mortgages to be settled in this action.

(22) One incorporated second mortgage borrower has opted out of the class and 43 investors holding 148 wrap-around mortgages have also declined to participate. Approximately 65% of all incorporated second mortgages will be settled in this action.

(23) No wrap-around mortgage borrower has opted out of the class. Only seven investors holding 12 wrap-around mortgages have declined to participate. Approximately 75% of all wrap-around mortgages will be settled in this action.

(24) The 20 first mortgagors who have objected to the settlement may decline to participate and file proofs of claim against the Salem Mortgage Company.

(25) The Court finds that the class is so numerous that the joinder of all members is impracticable because of the geographic dispersion throughout the State of Michigan and the approximately 2,500 mortgage transactions involved. This cause of action presents questions of law and fact common to each of the classes, inasmuch as the plaintiff classes have common claims and the defendant classes have common defenses. The claims or defenses of the representative parties are typical of the claims and defenses of the classes they purport to represent. The representatives of each class will fairly and adequately protect the interests of the class they have been nominated to represent. The tests of Rule 23(a) of the Federal Rules of Civil Procedure have been met.

(a) In the particular case of Mrs. Tony Scherschun, the subject of a strenuous objection by the objectors, the Court finds that her interests in protecting her initial investment and securing a return on same is an interest that predominates over all other interests she may have in the instant litigation. Mrs. Scherschun may or may not have the defense of holder in due course as a result of her purchased mortgages; this defense may be available to other class members. The Court finds that her interest in protecting her investment is clearly similar to the interests of the absent class members such that she can be found to be an adequate class representative.

(b) The Court finds that the proposed class action is clearly superior to any other form of resolution of these disputes, including the possibility of several hundred if not 1,000 different state court actions to foreclose against property where borrowers may not have paid according to the terms of their loans. This cause of action is also superior to state law causes of action in which the individual claims and defenses may be the subject of contested proceedings in various state courts throughout Michigan. These multiple actions will create additional hardship, uncertainty, and legal expenses for investors and borrowers alike.

(26) Assistant Attorney General, Luis F. Fernandez, testified as an officer of the court that he reviewed and considered several possible causes of action and the defenses that could be raised. He also testified concerning his reasons for concluding that the class action approach was preferable to any other form this litigation might take. Mr. Fernandez weighed and evaluated the claims and defenses on the following possible causes of action: usury; recission under the Federal Truth and Lending Act; damages under Federal Truth and Lending; breach of fiduciary duties; common law

fraud; violations of the Michigan Consumer Protection Act; and other relief that might be available through a negotiated reformation of the mortgages.

This Court finds that the proposed class should be certified and, through this Order, requests that the United States District Court enter an order accordingly. This recommendation is based on an analysis of the requirements of Rule 23, the possible claims and defenses that may be asserted by the individuals, and the need to consolidate these cases for an expeditious resolution conserving the time, energy, and assets of the litigants. Most of the borrowers who testified during this hearing stated clearly, under oath, that they suffered severe financial strain as a consequence of the downturn in the local economy in the past 36 months, because of family hardship, or being forced to live on fixed incomes. The burden and expense upon even those who object to this settlement in litigating claims to conclusion is incalculable. The testimony before this Court is clear that each claim presented by each objecting borrower would be vigorously defended through extended litigation. Even if the borrowers were afforded the services of publicly paid counsel, the Court has serious doubts if any of the litigants would be willing to endure months and years of uncertain litigation on these issues.

## CONCLUSIONS OF LAW

The proposed class plaintiffs and the proposed class defendants are adequately and properly represented under Rule 23. The Class plaintiffs may have valid causes of action under 15 U.S.C. § 1635, the Michigan Consumer Protection Act, the Michigan Corporation and Securities Act, and the regulations that enforce the Truth and Lending Act, 12 CFR § 226.1 et seq. The Defendant classes have valid defenses that must be weighed in evaluating this settlement. Each objecting borrower acknowledged that he or she wrote in personal handwriting on a form prepared by the Salem Mortgage Company that the individual knew a broker's fee was being paid. The Court makes no determination that the Plaintiffs' claim of the Defendants' defense will prevail. All parties to a proposed settlement must, for themselves, weigh and evaluate each claim and each possible defense. Whether the claim is grounded in usury, fraud, deceit, or misappropriation or the defense is based upon freedom of contract, full disclosure, ability to rescind, reasonableness of interest rate, or any other defense, this Court must respect the judgment that resulted from vigorous negotiations by able counsel. And, as said by a learned United States District Court Judge in reviewing the objectors request to withdraw the reference of this case to this court: "We are loath to interfere." [2]

This Court is without the power to compel the parties to negotiate a better deal. This Court cannot, upon the record presented, predict or state with any certainty that if any of the plaintiffs' claims or the defendants' defenses were tried to conclusion the outcome would be more favorable than the proposed settlement. Independent of the possibility of a different result, the Court must review the proposed settlement in terms of its fairness to the parties, recognizing that a settlement means a waiver of any number of claims and defenses that have been adequately disclosed on this record. The strength or absence of proof, availability of witnesses, uncertainty in the state of the law on any given issue, the possible delay in bringing the entire matter to trial after extended discovery and discovery expense, the likelihood of prevailing on certain claims or certain defenses, and the limited jurisdiction that this Court may have to afford the parties full and complete relief, are factors that may prompt a settlement to preserve and protect the interests of all parties. It is the mission of this Court, together with properly prepared counsel, to encourage and promote settle-

**2.** Opinion and Order of Honorable Robert E. DeMascio in *Kelley v. Salem,* 83–0964–G, entered August 1, 1983, page 3.

ment, to remove from litigants uncertainty in their personal affairs. In the case at bar, borrowers are fearful of losing their homes. Investors are fearful of losing their life savings. Extended discovery may or may not uncover assets that can be attached to satisfy judgments. No one can predict how long the process would take.

The Attorney General, through Assistant Attorney General, Luis F. Fernandez, conducted extensive negotiations to arrive at the settlement in this case. The record of these proceedings do not reveal extended depositions, discovery requests, or detailed interrogatories. The absence of discovery under the Federal Rules of Civil Procedure does not mean that the Attorney General was unaware of the strengths or weaknesses in this case. Informal and unsupervised negotiation may reveal as much as formal Court ordered discovery and afford all parties the opportunity to arrive at a reasonable settlement. If this settlement were the product of uneducated guesswork, this Court could recommend rejection. *In re Chicken Antitrust Litigation American Poultry,* 669 F.2d 228, 241 (5th Cir.1982). This settlement was arrived at through skillful and educated negotiation and was not, as the objectors would urge, a "shot in the dark."

Similarly, this Court must respect Mr. Fernandezes experience and investigative resources. He has concluded that the plaintiffs' cause of action for damages under Truth and Lending may end up in an uncollectable judgment. He has arrived at this conclusion after giving due weight and consideration to valid defenses and reasoning that if the defenses could be overcome, the judgment may be worthless. On the record presented in these hearing this Court cannot conclude that Mr. Fernandez and other co-counsel associated with him in this litiga-

tion have ignored or abandoned any substantial claim that could be made by the Plaintiffs. Each possible cause of action for usury, fraud, deception, violation of the Michigan Consumer Protection Act, violation of the Federal Truth and Lending Act, breach of fiduciary duty, recission of mortgage or other relief can and will be met by viable and valid defenses, including adequate disclosure, reasonable interest rate, waiver of the right to rescind, and the acknowledgement by some objectors that their desire to get the loan prompted them in desperation, to go forward with the transaction.

The goal of the law is to provide regularity, certainty, and security for individuals, businesses, and litigants. The uncertainties caused by this protracted litigation have prompted the parties to agree to a settlement that is adequate and fair to all interests. This settlement need not meet a standard of perfection in order to be approved by the Court.[3] Perfection in settlement, as in life, is impossible. A certain result is always preferable to protracted litigation which may serve only to exhaust everyone with no benefit to anyone. Accordingly, this Court approves the class certification as proposed by the Attorney General, endorses and approves the proposed settlement of the instant litigation, and recommends that the United States District Court enter the proposed Consent Judgment, together with entry of the within Order.

---

**3.** The proposed Consent Judgment reforms the mortgages and establishes a formula through which those borrowers in arrearage on payments may become current and those borrowers who have overpaid will receive a credit for overpayments. The judgment also requires borrowers to make payments in amounts necessary to replace missing escrow for tax and insurance payments. Objectors have intro-

duced testimony suggesting that a different method of calculation or a different value of settlement might be achieved through further negotiations or a trial on the merits. For the reasons set forth in the body of this opinion, the Court cannot find that the proponents of the settlement, who negotiated vigorously and at arms length, arrived at a result that is unreasonable or unfair.