In the Matter of SALEM MORTGAGE COMPANY, Fidelity Fund, Inc., Fidelity Securities Corp., Nationwide Mortgage Co., Debtors.

In the Matter of SALEM MORTGAGE COMPANY, Debtor.

Kathie BAKER, individually and as representative of a class of persons similarly situated, Plaintiffs,

v.

John J. HIGHLAND, Elaine M. Highland, and Cheryl E. Highland, Jointly and Severally, both individually and as representatives of a class of persons similarly situated, Defendants.

John J. HIGHLAND, Elaine M. Highland, and Cheryl E. Highland, Jointly and Severally, Third-Party Plaintiffs,

v.

SALEM MORTGAGE COMPANY, a Michigan corporation, Third-Party Defendants.

In the Matter of SALEM MORTGAGE COMPANY, Debtor.

Irene PUSTELAK and Virginia Pustelak, individually and as representatives of a class of persons similarly situated, Plaintiffs,

v.

Peter VANDENBERGHE and Ethel Vandenberghe, Jointly and Severally, both individually and as representatives of a class of persons similarly situated, Defendants.

Peter VANDENBERGHE and Ethel Vandenberghe, Jointly and Severally, Third-Party Plaintiffs,

v.

SALEM MORTGAGE COMPANY, a Michigan corporation, Third-Party Defendant.

Bankruptcy Nos. 83–01607–G and 83–01610–G to 83–01612–G. Adv. Nos. 84–1067, 84–1068–G.

United States Bankruptcy Court, E.D. Michigan, S.D.

Jan. 16, 1985.

Clark D. Cunningham, Detroit, Mich., for plaintiffs.

Martin W. Bordoley, Southfield, Mich., for defendants.

Kemp, Klein, Endelman & Beer, P.C., Birmingham, Mich., for trustee Francis C. Flood.

Thomas J. Barrow, Detroit, Mich., Trustee for Salem Mortg.

## ORDER DENYING PLAINTIFFS' MOTION FOR DETERMINATION OF NON–CORE PROCEEDINGS, TO REMAND, AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

RAY REYNOLDS GRAVES, Bankruptcy Judge.

These proceedings come before the Court on separate motions by the Plaintiff to remand, and to determine these proceedings to be non-core proceedings pursuant to 28 U.S.C. § 157(b)(3); and on Defendant's motion for summary judgment. For reasons set forth below the Court finds these proceedings to be core proceedings; Plaintiff's motion to remand and Defendant's motion for summary judgment are *Denied.* Because of the similarity in facts, issues, and third-party defendants the following order has been consolidated.

On April 10, 1981, Salem Mortgage Company (Debtor) executed a loan to Kathie Baker (Plaintiff Baker) in the amount of $5,000. The loan was secured by a mortgage against her home. The mortgage and the mortgage note, however, were in the amount of $7,200 and identified Federation Mortgage Company (Federation) as the lender.

The Debtor also prepared two Truth-In-Lending disclosure statements containing materially different information.

| | Salem Disclosure | Federation Disclosure |
| --- | --- | --- |
| Amount Paid to customer or for his account or to another on his behalf | $5,500.00 | $6,991.00 |
| Amount Financed | 5,709.00 | 7,200.00 |
| Mortgage Brokerage Fee | 1,491.00 | [left blank] |
| Annual Percentage Rate | 24% | 16% |
| Finance Charge | 7,098.36 | 5,607.36 |

On the same day, the Debtor mailed a letter notifying Plaintiff Baker that the mortgage had been assigned by Federation to Defendants John Highland, Elaine Highland, and Cheryl E. Highland (Defendants Highland).

Similarly, Irene Pustelak and Virginia Pustelak (Plaintiff Pustelak) borrowed approximately $4,000 from the Debtor by securing the loan with a mortgage against their home. The mortgage and mortgage note were in the amount of $5,200 and identified Roland A. Benge & Co., (Benge) as the lender. Here too, the Truth-In-Lending disclosure statements revealed materially different information:

| | Salem Disclosure | Federation Disclosure |
| --- | --- | --- |
| Amount Paid to customer of for his account or to another on his behalf | $4,000.00 | $5,020.00 |
| Amount Financed | 4,180.00 | 5,200.00 |
| Mortgage Brokerage Fee | 1,020.00 | [left blank] |
| Annual Percentage Rate | 23.50% | 15½% |
| Finance Charge | 4,372.04 | 3,352.04 |

On May 28, 1980, Benge assigned the mortgage to Defendants Peter VanDenberghe and Ethel VanDenberghe (Defendants VanDenberghe). Unlike the assignment of the Plaintiff Baker's mortgage, the Pustelaks were unaware of the assignment to Benge and on July 1, 1980, began making payments on the mortgage to the Debtor.

On September 18, 1981, a class action was filed in the Circuit Court for the County of Genessee, State of Michigan, on behalf of all persons who entered into mort-

gages or mortgage brokering agreements with the Debtor. *Rutter v. Mutual Mortgage* [1] *Company, et al.,* Case No. 82–65577–CP (Genessee County Circuit Court). The complaint alleged that the Debtor had violated the Truth-In-Lending Act (TILA), 15 U.S.C. § 1601 *et seq.,* the Michigan Consumer Protection Act (MCPA), Mich.Com. Laws Ann. § 445.901 *et seq.* and that the mortgages arranged by the Debtor were usurious. On October 10, 1982, a motion to certify the plaintiff class was filed.

On February 22, 1983, the Attorney General acting under the authority of the MCPA filed a motion to intervene in *Rutter* as a Plaintiff-Class representative and filed a proposed intervening class-action complaint. On March 30, 1983, the Debtor filed a voluntary petition in bankruptcy under Chapter 11 of the Bankruptcy Code. The Attorney General, on April 11, 1983, then commenced an adversary proceeding against the Debtor in bankruptcy court using the proposed intervening *Rutter* complaint as a model. Plaintiffs Baker and Pustelak were members of the proposed class of Plaintiffs. Defendants Highland and VanDenberghe were members of the proposed class of investors named defendants. A stipulation and order certifying plaintiff and defendant classes was submitted to and approved by this Court on June 14, 1983, *In re Salem Mortgage Company,* 34 B.R. 902 (Bkrtcy.E.D.Mich.S.D. 1983).

On July 20, 1983, a temporary restraining order was issued by the Court enjoining proceedings to foreclose mortgages or recover possession of property used to secure loans executed by the Debtor where the borrower was a member of a temporary-certified class.

On June 22, 1984, the District Court for the Eastern District of Michigan, Southern Division, dismissed the Order of the bankruptcy court certifying plaintiff and defendant classes for "lack of subject matter jurisdiction over the investors" *Kelly v. Salem Mortgage Company,* 41 B.R. 420, 423 (E.D.Mich.S.D.1984). On July 5,

1984, (Plaintiff Baker) appeared before the 36th District Court to respond to a complaint filed by Defendant Highland to evict her from the premises. The complaint was later dismissed upon stipulation of the parties. On August 18, 1984, the Defendants Highland mailed Plaintiff Baker a notice to terminate demanding possession of the premises on September 27, 1984.

On September 28, 1984, Plaintiff Baker filed a complaint against Defendants Highland in Wayne County Circuit Court. The five-count complaint asserts the same violations listed in the complaint for the class action and sought to enjoin eviction, set aside the purported mortgage, and recovery damages.

On June 22, 1984, Plaintiffs Pustelak were current in payments on their mortgage. On July 6, 1984, Plaintiffs Pustelak issued a notice of recission to Defendants VanDenberghe pursuant to the TILA, 15 U.S.C. §§ 1601, 1635. They also withheld their July, August, and September mortgage payments while negotiating the settlement of their claims. As a result of the negotiations, Defendants Pustelak accepted liability for missing escrow funds paid to Salem on Defendants behalf, but refused acknowledgement of recission of the mortgage.

On October 18, 1984, Plaintiffs Pustelak forwarded the withheld mortgage payments to the Defendants but did not waive their claim that the mortgage had been rescinded. Whereupon Plaintiff, on October 19, 1984, commenced this action ·in Wayne County Circuit Court alleging federal and state law claims and to declare the mortgage rescinded, and enjoin enforcement of the mortgage and for damages. On October 30, 1984, Plaintiff Pustelak received notice that the Defendants VanDenberghe had commenced foreclosure by advertisement. The foreclosure sale was scheduled for December 4, 1984.

Each complaint alleged the Debtor to have conspired with or acted as agents for the Defendants. In response, Defendants

---

1. Mutual Mortgage Company is a subsidiary of Salem Mortgage Company.

Highland and VanDenberghe, pursuant to Michigan General Court Rule 204.1(1) filed an ex parte petition to add the Debtor as third-party Defendants. The Wayne County Circuit Court entered the order on October 30, 1984. The third-party complaint prays for a judgment of complete indemnification, or in the alternative, contribution from the Debtor for any and all sums that defendants and third-party plaintiffs may be required to pay in settlement for judgment. Shortly after entry of the order adding the Debtor as third-party defendants, Debtor pursuant to 28 U.S.C. § 1478(a) removed the proceeding to the bankruptcy court. Plaintiffs now move for a determination that these proceedings are non-core proceedings, and to remand these proceedings to the Wayne County Circuit Court. Defendants move for summary judgment.

A determination of the nature of these proceedings must be made against the backdrop of case law and congressional action since *Northern Pipeline Construction Co. v. Marathon Pipeline Company*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *Northern Pipeline* found bankruptcy courts formed under the Bankruptcy Act of 1978 possessed "the essential attributes of Article III courts and constituted an unwarranted encroachment upon the judicial power of the United States." *Id.*, 102 S.Ct. at 2878. Though the congressional authority to create adjuncts to the district courts is broad, Congress does not "possess the same degree of discretion in assigning traditionally judicial power to adjuncts engaged in the adjudication of rights not created by Congress." *Id.* at 2877.

"The thrust of the *Northern Pipeline* holding is that peripheral nontraditional bankruptcy issues such as claims by the bankrupt against noncreditors cannot be adjudicated by Non-Art. III judge." *White Motor Corporation v. Citibank of N.A.*, 704 F.2d 254, 263 (6th Cir.1983). The Interim Rule adopted by the Judicial Councils of the eleven circuits successfully responded to cure the constitutional defect by providing a "uniform and expeditious processing of bankruptcy petitions", Id. at 262. *In re*

*Pines Assc., Inc.*, 733 F.2d 208 (2nd Cir. 1984); *Oklahoma Health Services Federal Credit Union v. Webb*, 726 F.2d 624 (10th Cir.1984); *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190 (3rd Cir.1983), cert. denied, —— U.S. ——, 104 S.Ct. 349, 78 L.Ed.2d 315; *White Motor Corp. v. Citibank, supra.; In re Hansen*, 702 F.2d 728 (8th Cir.1983) cert. denied, 463 U.S. 1208, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983); *In re Braniff Airways, Inc.*, 700 F.2d 214 (5th Cir.1983) cert. denied, 461 U.S. 944, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983). In particular, the Interim Rule responded to Justice Brennan's concern for the bankruptcy courts broad jurisdiction over matters related to bankruptcy action by referring all case and civil proceedings arising under Title 11 to the bankruptcy judge of the district. Additionally, the rule recited a laundry list of proceedings deemed to be related to bankruptcy actions and limited their treatment of the bankruptcy court to findings of fact and conclusions of law. Proceedings which were neither related nor expressly excluded from the jurisdiction of the bankruptcy court, were deemed to be core proceedings, congressionally created rights arising from the Bankruptcy Code well within the jurisdiction of the bankruptcy court from which the bankruptcy court could issue final orders of judgment.

Mindful of the *Northern Pipeline* decision and the success of the Interim Rule, in 1984 Congress made substantial amendments to the provisions of the Judicial Code pertaining to the bankruptcy court. Section 1334 of Title 28 confers original and exclusive jurisdiction on the district court of all cases under Title 11; the district courts have original, but not exclusive jurisdiction of all civil proceedings arising under Title 11, arising in or related to cases under Title 11. 28 U.S.C. § 1334. Absent from the Judicial Code are separate provisions describing bankruptcy courts in jurisdictional terms. Rather, 28 U.S.C. § 157 is captioned *Procedures* and extrapolates from the Interim Rule by providing that

bankruptcy proceedings shall be referred to the bankruptcy judge of the district.

Congress followed the beacon of the Interim Rule by dividing the proceedings referred to the bankruptcy court into core and non-core proceedings. Unlike the Interim Rule the Judicial Code defines the scope of the bankruptcy courts jurisdiction by way of expressed core proceedings without limitation. 28 U.S.C. § 157(b)(2).

Conspicuously absent from § 157 is a delineation of proceedings deemed to be related to bankruptcy actions. The Code imports the notion that matters related to bankruptcy actions are so intimately related to core proceedings that they may be separated only upon a demonstrated showing to the contrary. Indeed, the Supreme Court on no less than three occasions has conveyed that proceedings related to bankruptcy actions are closely interwoven with core proceedings. In *Katchen v. Landy*, 382 S.Ct. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), the Court suggested that a metamorphosis of state law claims occurs when it held the "Bankruptcy Act.... converts a creditors claims into a equitable claim to a pro rata share of the res." *Id.*, 86 S.Ct. at 476. In *United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), the Court indicates that state law rights arising in core proceedings constitute congressionally created rights. *Id.*, 103 S.Ct. at 410–11. More recently, in *Northern Pipeline, supra.* the Court noted that "bankruptcy adjudications themselves, as well as the manner in which the rights of debtors and creditors are adjusted, are matters of federal law." *Northern Pipeline*, 102 S.Ct. at 2878 n. 56. The cases further enhance what the Court has begun to make vividly clear: The congressional authority to aid in the reorganization of troubled debtors is of such vital importance that other interests, including those which may otherwise be rights created by state law, and interests of the federal government must give way to the aim of Congress. *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), *In re Whiting Pools*,

462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

But the Courts have been unable to agree on what constitutes a related proceeding triggering the jurisdiction of the bankruptcy Courts. Three tests prevail: the liberal, reasonable nexis test would find jurisdiction where the proceeding could potentially have any affect on the administration of the estate, or where a reasonable nexis to the parent bankruptcy has been determined to exist. *In re General Oil Distributors, Inc.*, 21 B.R. 888 (Bkrtcy.E. D.N.Y.1982), *In re Hartley*, 16 B.R. 777 (Bkrtcy.N.D.Ohio 1982), *In re U.S. Air Duct Corporation*, 8 B.R. 848 (Bkrtcy.N.D. N.Y.1981). The conservative test would require the proceeding affect the debtors schedule of assets and liabilities. *In re Wesco Products Co.*, 19 B.R. 908 (Bkrtcy. N.D.Ill.1982). The third test would require proof that property of the estate will be effected by the civil proceeding and that resolution of the proceedings is necessary for the administration of the estate before the bankruptcy court exercises jurisdiction, *United Coal Co., v. Hoyer*, 29 B.R. 1019 (D.C.W.D.Va.1983), *In re Brentano's*, 27 B.R. 90 (Bkrtcy.S.D.N.Y.1983). Plaintiffs urge the adoption of the restrictive test as defined in *Kelly, supra.*, which expressly rejected the liberal test, 41 B.R. at 422, and held:

In order for a Court to find that a dispute involving both debtor and nondebtor defendants is "related" a bankruptcy proceeding, and thus falling under its jurisdiction, it must first determine that:

1. (a) if the action proceeds in the debtors absence, complete relief cannot be accorded among the parties to the proceeding or

(b) the debtor claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the other parties to the action subject to substantial risk of incurring double, multiple, or otherwise incon-

sistent obligations by reason of the debtors claimed interest and

2. the action has a definite affect upon the debtors estate.

██ The facts reveal: (1) the Plaintiffs' complaint alleges the Debtor was an agent for the Defendants and conspired with the Defendants to violate TILA, MCPA and usury; (2) to reform or rescind the mortgages assigned by the Debtors to the Defendants the Court must find the Debtors violated the law by making loans in contradiction of TILA, MCPA, and usury law; (3) the proceedings will have an impact on the Debtors schedule of assets and liabilities. Should Plaintiffs prevail against the Defendants, a new claim against the Debtor will be asserted by the Defendants; (4) resolution of the dispute between the Debtor and the Defendants fixes the amount of liability of the Debtor with respect to both Plaintiffs and Defendants; (5) to the extent that the mortgages are reformed and the Defendants lose principal or income from their investments in accordance with the reformation of the mortgages the Defendants' contingent claims against the Debtor arise and become fixed; (6) to the extent that a reformation of mortgage notes and mortgages held by the Defendants reduces the value of the assets of the Debtor, the Defendants have a potential claim against the assignors by virtue of a breach of the assignment agreement or other contractual duties of the Debtor. (7) Review of *Barrow v. Barnett*, Adv.Pro. No. 84–0777–G and *Barrow v. Finkelstein*, Adv.Pro. No. 84–0070–G as cited in Defendants' brief thoroughly documents the manner in which the Debtor generated mortgages and their relationship to the investors. *See* also *In re Salem Mortgage, supra.*

Though we find these proceedings to be sufficiently related to the bankruptcy of the Debtor this does not dispose of the issue. Under the Cannon of Statutory Construction, Congress is presumed to be aware of judicial interpretations of the statute. "Congress cannot be presumed to have adopted one standard over another without some affirmative indication of

which it prefered" *Bildisco*, 104 S.Ct. at 1196. As to the jurisdiction of the bankruptcy court, Congress has given an affirmative indication that proceedings affecting the administration of the estate under 28 U.S.C. § 157(b)(2)(O) are presumed to be core proceedings.

Section 157(b)(2)(O) not only adopts the view rejected by *Kelly*, but incorporates the very language into the definition of core proceedings:

(O) *other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship ...*

28 U.S.C. § 157(b)(2)(O) (Emphasis Added).

Hence, core proceedings include, and embody, related matters affecting the estate until shown and determined to be otherwise. Our finding is based on the development of the Bankruptcy Code, the success of the Interim Rule adopted by the Judicial Councils of the eleven circuits, and the action of Congress presumed and demonstrated to be in response to the *Northern Pipeline* decision. We find, therefore, these proceedings to be core proceedings within the meaning of § 157(b)(2)(O).

We do not overlook Plaintiffs' argument that *Kelly* should be read with *Pacor, Inc., v. Higgins*, 743 F.2d 984 (3rd Cir.1984), to require a binding agreement such as a guarantee between the Debtor and the Defendants in order to find jurisdiction. *Pacor* would require the Debtor to be bound by *res judicata* or collateral estoppel, or, in the alternative, a finding that "automatic liability against the debtor exist" in order to find a civil proceeding has an affect on the estate.

██ The necessity of a binding agreement may be appropriate where the third party is a stranger to the bankruptcy proceedings *In re Haug*, 19 B.R. 223 (Bkrtcy. Or.1982), or where the assets of the debtor will not be used to pay the Plaintiffs' award of damages, *In re Osage Exploration Co.*, 39 B.R. 966 (Bkrtcy.S.D.N.Y. 1984), or where the attorneys of the debt-

ors are used to create jurisdiction, *United Coal Co., supra.* But the Code does not envision a finding of a guarantee or liability as a condition precedent to a determination that a civil proceeding regarding the sustained, interlocking transactions of the defendants with the debtor affect the administration of the estate. These are not strange bedfellows [2] and the relationship between the Debtor and the Defendants should not be shrouded by guarantees whose characteristics, potential for litigation, and affect on the estate may equal that of a third-party complaint. Accordingly, Plaintiffs' motion to remand is DENIED.

## SUMMARY JUDGMENT

In their motions for summary judgment Defendants maintained that the Plaintiffs' claims arising under TILA, MCPA, and Michigan Common Law Fraud are barred by the statute of limitations. Specifically, Defendants rely on 15 U.S.C. § 1635(f) which provides that the right of recission of a mortgage shall expire three years after the date of consummation of the transaction, or upon the sale of the property, and Mich.Comp.Laws Ann. § 600.5805(8) which provides that the statute of limitations for actions to recover damages for injury to a person or property is three years.

 The equitable tolling of the statute of limitations to prevent unjust results in cases apply to cases arising under law as well as equity. *Jones, et al. v. TransOhio Savings Association,* 747 F.2d 1037 (6th Cir.1984). The equities inherent in the tolling of the statute of limitations descends upon individuals and class plaintiffs alike.

> [T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action. [citations omitted]

---

**2.** As of the date of removal of these proceedings from Wayne County Circuit Court, defendants Peter and Ethel Vandenberghe have filed four-

Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suit of intervene as plaintiffs in the pending action.

*Crown, Cork and Seal Co., v. Parker,* 462 U.S. 348, 103 S.Ct. 2392, 2397, 76 L.Ed.2d 628 (1983).

Michigan has codified the tolling of the statute of limitations as to persons within a proposed class action. GCR, 208.6 provides:

> (A) The statute of limitations is tolled as to all persons within the class described in the complaint on the commencement of an action asserting a class action.
>
> (B) The statute of limitations resumes running against class members other than representative parties and interveners:
>
> (3) On entry of an order denying certification of a class as a class action;

GCR, 208.6. *See* also, *Kiluma v. Wayne State University,* 72 Mich.App. 446, 250 N.W.2d 81 (1976).

The transactions at issue in these proceedings occurred in May 1980, and April 1981. Plaintiffs and Defendants were members of the proposed class actions initiated in the Circuit Court for Genessee County in May 1981. To date, no order from the Circuit Court certifying the class has been entered.

 Plaintiffs were also members of the Plaintiff class given preliminary certification by this Court on November 17, 1983. They remained part of the class until the district court denied certification on June 22, 1984. We find, therefore, that the statute of limitations was tolled as to each of the Plaintiffs and that their actions against

teen proof of claims against the Debtor, totalling $10,746.03.

the Defendants are timely exercises of the options delineated in *Parker*.

█ Additionally, we find Defendants' application of Mich.Comp.Laws Ann. § 600.5805(8) to be clearly erroneous. Claims arising under state law for economic harm caused by fraudulent representations and for violations of MCPA and are governed by Mich.Comp.Laws Ann. § 600.-5813, *Case v. Goren*, 43 Mich.App. 673, 204 N.W.2d 767 (1972); *Sweet v. Shreve*, 262 Mich. 432, 247 N.W. 711 (1933), and Mich.Comp.Laws Ann. § 445.911(7), respectively which provide for a six year statute of limitations.

Defendants also raise the affirmative defense that Federation and Benge are lenders regulated by federal law and are exempt from the interest provisions of Mich.Comp.Laws Ann. § 438.31c. Review of the motions, and affidavits coupled with this Court's decision in *Barrow v. Finkelstein*, 84–0070–G (November 5, 1984) fails to persuade the Court that Defendant has carried the burden of proof to so find.

█ Nor is the Court persuaded by Defendants' argument that the foreclosure sale is unaffected by the July 20, 1983, temporary restraining order enjoining the proceeding to foreclosure mortgages. While Defendants claim not to have received actual notice until July 27, 1983, Defendants do not deny receipt of the Notice of Class Action and Proposed Settlement issued by this Court June 13, 1983. The notice outlined the rights and effect of the class action on the Defendants; the Defendants had the opportunity to notify the Court in writing of its desires to be excluded from the class action on or before July 15, 1983. The record is devoid of any notice of Defendants' exercising that right. Defendants are therefore bound by the July 20, 1983 Order of this Court.

Accordingly, the Defendants' Motion for Summary Judgment should be, and herein is, DENIED.

IT IS SO ORDERED.