BOYCE F. MARTIN, Jr., Circuit Judge.
This case presents the question of the extent of the district court’s bankruptcy jurisdiction under 28 U.S.C. § 1471(b)[1] over *628 civil proceedings “related to cases under title 11.”[2] Although section 1471 was effectively repealed by the Bankruptcy Amendments and Federal Judgeship Act of 1984,[2] the “related to” jurisdictional grant to district courts is continued in the current version of 28 U.S.C. § 1334(b).[4] The dis *629 trict court below held that this adversary proceeding was beyond the “related to” jurisdiction of the district court and dismissed the case. We hold that the district court had jurisdiction and therefore reverse.
While the debtors’ pattern of business operations is not entirely clear, it appears that Salem Mortgage Company and related debtor and nondebtor corporations acted as mortgage brokers prior to bankruptcy. Borrowers who were unable to obtain credit from any other source were made loans secured by first, second, or wraparound mortgages on their residences; substantial “attorney” or “broker” fees were allegedly charged in connection with some of the loans. These mortgages were assigned to individuals, groups, corporations, or associations as investment vehicles. It is alleged that the actions of Salem and related parties were less than punctilious, and in particular that the mortgagors have possible claims against them for, inter alia, fraud, deceit, usury, breach of fiduciary duty, violations of the Michigan Consumer Protection Act, Mich.Comp.Laws Ann. §§ 445.-901-.922, violations of the Truth in Lending Act, 15 U.S.C. §§ 1601-1667e, and misappropriation of escrow funds. The investors are mostly unsophisticated senior citizens and the victims of admitted securities fraud.[3] See Mich. Corp. & Securities Bureau case No. 82-39-S. It is unsettled, however, whether some, all, or none of the investors could claim the status of holder in due course.
Salem and three related corporations filed separate voluntary petitions under chapter 11 of the Bankruptcy Code on March 30, 1983. The bankruptcy court ordered the petitions of the four debtors, Salem, Fidelity Fund, Inc., Fidelities Securities Corporation, and Nationwide Mortgage Company, consolidated for administration and appointed Thomas J. Barrow as trustee for all four debtors.[5]
[6] Frank J. Kelley, Attorney General of the State of Michigan, on April 11, 1983, filed this adversary proceeding against the debtors and eight other defendants.[7] The complaint sought equitable, legal, and declaratory relief under the Michigan Consumer Protection Act and asked the court to certify the Attorney General as class representative for seven different subclasses of mortgagors. The Attorney General on May 23, 1983, filed an amended complaint, adding representative *630 members of an asserted class of assignees of the mortgages as defendants.
The major parties in interest[8] negotiated a stipulation for temporary class certification and a proposed final consent judgment, which was presented to the bankruptcy court on May 23, 1983, and amended on June 13, 1983. This settlement proposed certification of three plaintiff classes of mortgagors — a second mortgage corporation borrower class,[9] a wraparound mortgage borrower class,[10] and a first mortgage borrower class [11] — and certification of three defendant classes of assignees consisting of the owners of the mortgagees’ interest in the loans of the respective plaintiff classes. The primary effect of the consent judgment would be to reform the mortgages: incorporated second mortgages would have their interest rate reduced to fifteen percent on the original principal balance after excluding any “attorney” or “broker” fee, wraparound mortgages would have their interest rate reduced to seven percent on the new money after excluding any “attorney” or “broker” fee, and the first mortgages would have their interest rate reduced by one percent from the commencement of the loan but not below fifteen percent. Mortgagors would retain claims against Salem’s estate if their previous payments exceeded the reformed mortgage or if they suffered a loss from escrow payments for taxes and insurance. The reformation otherwise would form an accord and satisfaction of all the mortgagors’ claims, leaving the assignees free to litigate their claims against the debtors.[12]
The bankruptcy court on June 14, 1983, approved temporary classes for the purpose of considering the proposed settlement and conditionally approved the proposed consent judgment. Both mortgagors and assignees could opt out of the action, *631 and a number from each class did so.[13] After taking testimony and considering the arguments of certain objector mortgagors who believed that the proposed settlement would not be sufficiently beneficial to them, the bankruptcy court on November 17,1983, entered a Proposed Order Approving Class Certification, Settlement of Class Action Litigation, and Entry of Consent Judgment. In re Salem Mortgage Co., 34 B.R. 902 (Bankr.E.D.Mich.1983).
The proposed order was reviewed by the district court in accordance with the Interim Rule. See White Motor Corp. v. Citibank, 704 F.2d 254, 266-67 (6th Cir.1983). The district court for the first time raised the question whether it possessed subject matter jurisdiction. After oral argument and the consideration of briefs, the court concluded in a memorandum and order dated June 22, 1984, that it did not have subject matter jurisdiction under 28 U.S.C. § 1471(b) over the adversary proceeding. Kelley v. Salem Mortgage Co., 41 B.R. 420 (E.D.Mich.1984). Both plaintiffs and defendants appealed. We find jurisdiction and therefore reverse.
To begin our review it should be noted that the district court filed its order on June 22, 1984, and the notice of appeal was filed on July 16, 1984. The appeal was thus taken six days after the effective date of the Bankruptcy Amendments Act and this appeal is subject to its provisions.[14]
Bankruptcy appeals under the Bankruptcy Reform Act were governed by 28 U.S.C. § 1293. Appeals are now authorized by 28 U.S.C. § 158, which provides:
§ 158. Appeals
(a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.
(b) (1) The judicial council of a circuit may establish a bankruptcy appellate panel, comprised of bankruptcy judges from districts within the circuit, to hear and determine, upon the consent of all the parties, appeals under subsection (a) of this section.
(2) No appeal may be referred to a panel under this subsection unless the district judges for the district, by majority vote, authorize such referral of appeals originating within the district.
(3) A panel established under this section shall consist of three bankruptcy *632 judges, provided a bankruptcy judge may not hear an appeal originating within a district for which the judge is appointed or designated under section 152 of this title.
(c) An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules.
(d) The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section.
Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, sec. 104(a), § 158, 98 Stat. 333, 341 (emphasis added). We need not now resolve the question whether this case can be treated as having been referred to the bankruptcy judge under section 157, as required by section 158, as we find an alternative basis for jurisdiction in 28 U.S.C. § 1291, which gives us jurisdiction from “all final decisions of the district courts.” [15] Under either section 158 or section 1291, a final judgment is required for appellate jurisdiction.
The final paragraph of the district court’s order says only that “the proposed order ... must be DISMISSED because it includes the compromise of the claims of a group of investors over whom the federal courts do not have subject matter jurisdiction.” Standing by itself, this would leave open the question whether the district court intended to dismiss the entire adversary proceeding, or merely intended the parties to go back and fashion a settlement including only those parties for whom jurisdiction could be found. The question is quickly resolved by the immediately preceding sentence: “We find that this adversary proceeding does not meet either prong of this test for determining whether a dispute is ‘related to’ a bankruptcy action.” We are satisfied that there was a final judgment giving us appellate jurisdiction, and we now turn to the merits of the appeal.
The current grant of bankruptcy jurisdiction in the district courts is found in 28 U.S.C. § 1334(a)-(b) which is the present version of what was formerly 28 U.S.C. § 1471(a)-(b). There is little legislative history of the present section 1334. For the *633 Bankruptcy Reform Act of 1978, both the House and Senate proposed bills that were the basis for section 1471. The House bill, H.R. 6, was introduced in the Ninety-fifth Congress on January 4, 1976. It presented a broad grant of jurisdiction strikingly similar to present law, except that jurisdiction was in the bankruptcy rather than the district courts.[16] In a Report subsequently released to accompany the bill, which was reintroduced as H.R. 8200, the Committee on the Judiciary indicated its dissatisfaction with any attempt to restrict bankruptcy jurisdiction. H.R.Rep. No. 595, 95th Cong., 1st Sess. 51 (1977), reprinted in 1978 U.S. Code Cong. & Ad.News 5963, 6012. Rather, the Committee intended a grant of “broad and complete jurisdiction over all matters and proceedings that arise in connection with bankruptcy cases.” Id. at 48-49 (footnotes omitted), reprinted in 1978 U.S.Code Cong. & Ad.News at 6010.
The initial version of the Senate bill, S. 2266, introduced on October 31, 1977, gave the district court a much more constricted jurisdictional grant than the House bill. S. 2266, 95th Cong., 1st Sess. § 202 (1977). This bill subsequently was amended to bring the jurisdictional provisions closer to the House version, S. 2266, 97th Cong., 2d Sess. § 216 (1978), reprinted in 3 Collier on Bankruptcy VII-1, 605-06 (L. King 15th ed. App.1985), and it was these provisions that ultimately became law in 28 U.S.C. § 1471(a)-(b).[17] Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, sec. 241(a), § 1471(a)-(b), 92 Stat. 2549, 2668; see supra note 1. The Report filed by the Senate Committee on the Judiciary shows that it shared the House’s concerns over the limited jurisdiction of prior law, see S.Rep. No. 989, supra note 15, at 17-18, reprinted in 1978 U.S.Code Cong. & Ad.News at 5803-04, and intended, like the House Committee, to make such a broad jurisdictional grant as to “leave no doubt as to the scope of the jurisdiction over disputes to be exercised by the bankruptcy court.”[18] The *634 emphatic terms in which the jurisdictional grant is described in the legislative history, and the extraordinarily broad wording of the grant itself, leave us with no doubt that Congress intended to grant to the district courts broad jurisdiction in bankruptcy cases.
Courts have developed different tests in determining whether subject matter jurisdiction exists in a proceeding claimed to be “related to” a particular bankruptcy case. Some courts would find jurisdiction “only where the action clearly involved property of the estate ... or where a determination of the controversy is required for the proper administration or reorganization of the estate____” In re General Oil Distributors, Inc., 21 B.R. 888, 892 n. 13. (Bankr.E.D.N.Y.1982) (citations omitted). Another test finds jurisdiction “whenever ‘the outcome of the proceeding could conceivably have any effect upon the estate being administered in bankruptcy.’ ” Id. (citing Mazur v. U.S. Air Duct Corp., 8 B.R. 848, 851 (Bankr.N.D.N.Y.1981) (emphasis in original)). Although situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement, we believe that a broader interpretation of the statute more closely reflects the congressional intent in adopting the new bankruptcy laws.
The proposed order in this case provided that the plaintiff classes would release all claims against the debtors arising from the mortgage transactions except for claims concerning the alleged misappropriation of escrow funds. The order also provided that the debtors pay civil penalties under the Michigan Consumer Protection Act. The corporations’ penalties are to be subordinated to the claims of the general creditors. Resolution of the dispute, moreover, will affect the liability of the debtors to the investors. For example, to the extent the value of the mortgages is reduced by their reformation, the investors may have an action against the debtors such as breach of the assignment agreement. Because of the nature of these mortgage transactions, we hold that this dispute is sufficiently related to the estate of the bankrupt such that the district court had jurisdiction over the subject matter under 28 U.S.C. § 1471, now 28 U.S.C. § 1334, and thus improperly dismissed the proceeding.
The objectors to approval of the order of the bankruptcy court argue strongly that approval would be in conflict with the Third Circuit. However, we do not find the analysis in Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir.1984) to be compelling in this case. In Pacor, the plaintiff brought a state court action for work-related exposure to asbestos against the product’s supplier. The supplier filed a third-party complaint impleading the original manufacturer. After the manufacturer entered chapter 11 bankruptcy proceedings, the supplier sought to remove the entire controversy to bankruptcy court. The Third Circuit held that the action between the supplier and manufacturer was removable, but that the original action against the supplier was not related to a case in bankruptcy and therefore could not be removed. As Judge Graves stated in a subsequent proceeding in this case, “Pacor would require the Debtor to be bound by res judicata or collateral estoppel, or, in the alternative, a *635 finding that ‘automatic liability against the debtor exist’ in order to find a civil proceeding has an effect on the estate.” Matter of Salem Mortgage Co., 50 B.R. 34, 40 (Bankr.E.D.Mich.1985). In distinguishing Pacor, we note that the parties in the mortgage transactions in this proceeding are more intertwined than the parties in Pacor. We also agree with Judge Graves that the statute does not require a finding of definite liability of the estate as a condition precedent to holding an action related to a bankruptcy proceeding. Id. at 41. As discussed above, Congress intended a grant of broad jurisdiction under the bankruptcy laws.
We note that this jurisdictional grant was simultaneously qualified by the abstention provision of 28 U.S.C. § 1471(d) in the 1978 Act, see supra note 1, now 28 U.S.C. § 1334(c), see supra note 4. Although section 1334(c)(2) does not apply to pending cases, Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, § 122(b), 98 Stat. 333, 346, the limitations in section 1334(c)(1) are sufficient to keep federal jurisdiction from becoming overextended. Congress wisely chose a broad jurisdictional grant and a broad abstention doctrine over a narrower jurisdictional grant so that the district court could determine in each individual case whether hearing it would promote or impair efficient and fair adjudication of bankruptcy cases. See Note, Selective Exercise of Jurisdiction in Bankruptcy-Related Civil Proceedings, 59 Tex.L.Rev. 325, 334-36 (1981). The degree to which the related proceeding is related to the bankruptcy case, as a practical matter, will doubtless be an important factor in the decision whether to abstain. The present posture of this ease is that no decision to abstain has as yet been made and we make no comment on the appropriateness of abstention.
The judgment is reversed and the case is remanded for further proceedings. No costs are awarded.

. Section 1471 reads in full:
§ 1471. Jurisdiction
(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.
(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.
*628 (d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.
(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtors, as of the commencement of such case.

. This case is not affected by the Supreme Court's holding in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which held that the grant of jurisdiction to the bankruptcy courts in section 1471(c) was unconstitutional. The jurisdictional grant to the district courts in section 1471(a)-(b) was not affected by the Court's decision. White Motor Corp. v. Citibank, 704 F.2d 254, 259-60 (6th Cir.1983).

. Section 1471 was enacted by Title II of the Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, § 241(a), 92 Stat. 2549, 2668-69, and was not due to take effect until April 1, 1984. Id. § 402(b), 92 Stat. at 2682; see also Act of June 20, 1984, Pub.L. No. .98-325, § 1(a), 98 Stat. '268 (substituting June 28, 1984, as effective date). Section 1471 nevertheless was made applicable to the courts of bankruptcy, including district courts, in the transition period until that date. Bankruptcy Reform Act, § 405(b), 92 Stat. at 2685.
The Bankruptcy Amendments Act amended section 402(b) of the Bankruptcy Reform Act to provide that the provisions of Title II "shall not be effective,” except for certain exceptions, not relevant here, enumerated in section 402(c)-(d). Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, § 113, 98 Stat. 333, 343. The Bankruptcy Amendments Act also amended section 402(b), (e) to provide that the provisions of Title II and sections 335(a) and 336(a) of the Bankruptcy Reform Act 'ishall take effect on the date of enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984." Id. § 121(a), 98 Stat. at 345. Sections 335(a) and 336(a) of the Bankruptcy Reform Act, made effective by section 402(e), made only minor changes in the jurisdiction of the district courts of Guam and the Virgin Islands and were in any case superseded by an Act of Oct. 5, 1984, Pub.L. No. 98-454, §§ 702, 801, 98 Stat. 1732, 1737, 1741. The primary effect of section 121(a) of the Bankruptcy Amendments Act is to continue the provisions of Title II of the Bankruptcy Reform Act, and that is in irreconcilable conflict with section 113 of the Bankruptcy Amendments Act. An excellent account of the circumstances leading up to this and other bankruptcy confusions may be found in Countryman, Scrambling to Define Bankruptcy Jurisdiction: The Chief Justice, the Judicial Conference, and the Legislative Process, 22 Harv.J. On Legis. 1 (1985).
The provisions of Title II must be deemed effectively repealed wherever they are supplanted by the specific provisions of Bankruptcy Amendments Act or other circumstances show that Congress must have intended repeal. With regard to section 1471, congressional intention cannot be in doubt. The purpose of the Bankruptcy Amendments Act was to reform bankruptcy jurisdiction, and it is inconceivable that Congress would carry out that task and then intentionally continue the jurisdictional provisions struck down in Northern Pipeline.

. Section 1334 was amended by section 101(a) of the Bankruptcy Amendments Act, 98 Stat. at 333, to read as follows:
§ 1334. Bankruptcy cases and proceedings
(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
(c) (1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as *629 such section applies to an action affecting the property of the estate in bankruptcy.
(d) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the estate.

. The trustee in bankruptcy has claimed, however, that some investors were notable exceptions.
Many of these investors were active participants in the Debtors' mortgage scheme and were the sole financing source of the mortgages in question. Further, the Debtors historically made hundreds of thousands of dollars of payments to favored investors even where the underlying mortgages were in default. The Debtors also advanced huge sums of monies on these investors’ behalf for foreclosures and repairs on abandoned houses. The Debtors accomplished these acts by misappropriating the monies of less "connected’’ investors. It is these innocent unsecured parties whose monies were misappropriated who would be the primary beneficiaries of the Consent Judgment which would relieve the Estate of millions of dollars worth of liabilities allowing more monies available to pay these claims.
Brief of Defendant-Appellant Thomas J. Barrow as Trustee of Salem Mortgage Company, et al., at 11-12.

. A fifth related corporation, Mutual Mortgage Company, filed a petition for relief under chapter 11 on February 3, 1984, and Barrow subsequently was named trustee of that estate. The five bankruptcies were substantially consolidated by an order of the bankruptcy court on May 9, 1984.

. The other defendants were Ronald A. Benge and Company, Federation Mortgage Corporation, Mutual Mortgage Company (later a debt- or), Joseph Steingold, Barbara Woolf Steingold, Bernard Chaben, Patricia K. Arwood, and Goldwyn J. Robinson. All the corporate defendants except Benge and Federation Mortgage had their principal place of business at 17,520 West 12 Mile Road, Southfield, Michigan 48076, and all the individual defendants were officers of corporate defendants located at that address.

. Benge and Federation Mortgage did not participate in the stipulation, which provided that they would be dismissed from the action.

. The second mortgage corporation borrower class was defined as
[a]ll borrowers who obtained a loan after May 11, 1977, secured by a junior lien (e.g. second mortgage) on their home arranged by Salem Mortgage Company or Mutual Mortgage Company in which the borrower was required to form a corporation as a condition of the loan. The class excludes borrowers who repaid their loan before March 30, 1983, or, being represented by counsel, settled claims with Salem or the mortgage owner.

. The wraparound mortgage borrower class was defined as
[a]II borrowers who obtained a loan after May 11, 1977, secured by a "wraparound mortgage," namely a loan secured by a new mortgage in which the first mortgage was not discharged on their home, arranged by Salem Mortgage Company, and the borrower was not required to form a corporation as a condition of the loan. The class excludes borrowers who repaid their loan before March 30, 1983, or, being represented by counsel, settled claims with Salem or the mortgage owner.

. The first mortgage borrower class was defined as
[a]ll borrowers who obtained a loan after May 11, 1977, arranged by Salem Mortgage Company secured by a first mortgage on their home, whether or not they formed a corporation. The class excludes borrowers who repaid their loan before March 30, 1983, or, being represented by counsel, settled claims with Salem or the mortgage owner.

. The proposed Order Certifying Class Actions and Further Order of Consent Judgment stated:
16. Apart from continuing rights under this judgment and the mortgage and note as reformed, the parties and class members release each other and release all defendants in this action from any claims they may have arising out of the transactions embraced by this judgment, except the mortgage owners do not release claims against the defendant corporations. This judgment is not a release or waiver of any claims the Trustee may assert in the ownership of any mortgage.
17. Except for the provisions of this consent judgment, the complaint is dismissed with prejudice as to all defendants and without the assessment of costs or attorney fees. The proposed order explicitly gave assignees a
claim against Salem’s estate for any credit given to second mortgage corporation borrowers or wraparound mortgage borrowers for “broker" or "attorney" fees. Presumably assignees would also retain a claim against the debtors for any loss on their investment caused by the debtors’ fraud.
The settlement also provided that Salem, Mutual, Nationwide, and Joseph Steingold would pay civil penalties of $25,000.00 each under the Michigan Consumer Protection Act, the corporations’ penalties to be subordinated to the claims of their general creditors.

. The Attorney General reserved the right to withdraw from the stipulated settlement if more than a specific percent of the class members opted out.

. Section 122 of the Bankruptcy Amendments Act provides as follows:
SEC. 122. (a) Except as otherwise provided in this section, this title and the amendments made by this title shall take effect on the date of the enactment of this Act [July 10, 1984].
(b) Section 1334(c)(2) of title 28, United States Code, and section 1411(a) of title 28, United States Code, as added by this Act, shall not apply with respect to cases under title 11 of the United States Code that are pending on the date of enactment of this Act, or to proceedings arising in or related to such cases.
(c) Sections 108(b), 113, and 121(e) shall take effect on June 27, 1984.
Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, § 122, 98 Stat. 333, 346. The reference to pending cases in section 122(b) implies that, except for those subsections specifically excepted in section 122(b) (which are not relevant here), the provisions of Title I of the Bankruptcy Amendments Act apply to pending cases. That is the general rule, Bradley v. School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), and the legislative history indicates that at least one Senate conferee thought the Act would apply to pending cases. 130 Cong.Rec. S8896 (daily ed. June 29, 1984) (statement of Sen. Hatch), reprinted in 1984 U.S.Code Cong. & Ad.News 590, 605-06. This Circuit explicitly held in In re White Motor Credit, 761 F.2d 270, 272-73 (6th Cir.1985), that section 122 "makes all the provisions of the 1984 Bankruptcy Act applicable to pending cases, except the mandatory abstention provision and the jury trial provision for tort cases.”

. Section 1291 provides:
§ 1291. Final decisions of district courts
The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.
The Ninth Circuit has held that section 158 forms the exclusive grant of appellate jurisdiction in bankruptcy, In re Teleport Oil Co., 759 F.2d 1376 (9th Cir.1985) (per curiam), and this is in accord with some cases applying section 1293 prior to the Bankruptcy Amendments Act. In re International Horizons, 689 F.2d 996, 1000 n. 6 (11th Cir.1982); Universal Minerals v. C.A. Hughes & Co., 669 F.2d 98, 101 n. 3 (3d Cir.1981). However, the failure of section 158 to grant appellate jurisdiction in cases not referred to bankruptcy judges under section 157 shows that it is not a "comprehensive and exclusive scheme,” id.; Congress is unlikely to have sub silentio removed the right to appellate review in these cases. Nor are grants of jurisdiction normally exclusive: for example, the grant of federal question jurisdiction in 28 U.S.C. § 1331 is not exclusive of other jurisdictional bases. Congress certainly appears to have assumed that section 1291 would be available for bankruptcy appeal, for that provision was at one point proposed to be the exclusive source of our jurisdiction. See S.Rep. No. 989, 95th Cong., 2d Sess. 18, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5804. At least five other circuits, including the Third Circuit in a case implicitly overruling Universal Minerals, have looked to section 1291 to find appellate bankruptcy jurisdiction. In re King Memorial Hospital, 767 F.2d 1508 (11th Cir.1985) (per curiam); In re MartinTrigona, 763 F.2d 135, 138 (2d Cir.1985); In re Amatex Corp., 755 F.2d 1034, 1038-39 & n. 4 (3d Cir.1985); John E. Burns Drilling Co. v. Central Bank, 739 F.2d 1489, 1491-92 (10th Cir.1984) (per curiam); In re UNR Industries, 725 F.2d 1111, 1115 (7th Cir.1984).

. After one attempt to restrict bankruptcy jurisdiction was soundly defeated, 124 Cong.Rec. 1799-1804 (Feb. 1, 1978); see 1 Collier on Bankruptcy § 1.03[3][d] (L. King. 15th ed. 1985), it was the version in H.R. 8200 that ultimately passed the House. 124 Cong.Rec. 1804 (Feb. 1, 1978).

. The only difference between the version of 28 U.S.C. § 1334(a)-(b) proposed in S. 2266 and 28 U.S.C. § 1471(a)-(b) as it became law in the Bankruptcy Reform Act is that the last line of subsection (b) was changed from "arising under or related to cases under title 11” to "arising in or related to cases under title 11.” This change took place in the compromise bill agreed upon by the House and Senate floor managers and, while there is no explanation of it in the legislative history, it appears to be a stylistic change. The floor managers’ joint explanatory statement refers to bankruptcy jurisdiction as "pervasive jurisdiction over all proceedings arising in or related to bankruptcy cases.” 124 Cong.Rec. 32,410 (Sept. 28, 1978) (statement of Rep. Edwards); 124 Cong.Rec. 34,010 (Oct. 5, 1978) (statement of Sen. DeConcini).
After the Supreme Court struck down section 1471(c) in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), Congress enacted the new jurisdictional statute in 28 U.S.C. § 1334. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, § 101, 98 Stat. 333, 333; see supra notes 3-4. Section 1334(a) — (b) retains the prior jurisdictional language, and there is every reason to believe that Congress had no desire to contract the jurisdictional grant in any way. Congress could, after all, have easily cured the constitutional infirmity announced in Northern Pipeline by restricting the bankruptcy courts to their prior jurisdiction under the Bankruptcy Act of 1898.

. Subsection (b) grants to the U.S. district courts original, but not exclusive, jurisdiction of all civil proceedings arising under title 11 or arising under or related to cases under title 11. This broad grant of jurisdiction will enable the bankruptcy courts, which are created as adjuncts of the district court for the purpose of exercising the jurisdiction, to dispose of controversies that arise in bankruptcy cases or under the bankruptcy code. Actions that formerly had to be tried in the State court or in the Federal district court, at great cost and delay to the estate, may now be tried in the bankruptcy court. The idea of possession and consent as bases for jurisdiction is eliminated. The adjunct bankruptcy courts will exercise in personam jurisdiction as well as in rem jurisdiction in order that they may handle everything that arises in a bankruptcy case.
The jurisdiction to be exercised by the bankruptcy courts is of all proceedings arising under title 11 or arising under or related to a case under title 11. The term “proceeding” is used instead of “matters and proceedings,” the terminology currently used in the Bankruptcy *634 Act and Rules. As used' in this section everything that occurs in a bankruptcy case is a proceeding. Thus, proceeding here is used in its broadest sense, and would encompass what are now called contested matters, adversary proceedings, and plenary actions under current bankruptcy law. It also includes and [sic] disputes related to administrative matters in a bankruptcy case. Likewise, the term proceeding includes issues which may arise after a case is closed, such as in a controversy over a reaffirmation agreement under section 524(b) of title I of the bill.
The phrase "arising under title 11” will enable the bankruptcy court to hear any matter under which a claim is made under a provision of title 11. The combination of the three bases for jurisdiction, "arising under title 11,” "arising under a case under title 11,” and "related to a case under title 11," will leave no doubt as to the scope of the jurisdiction over disputes to be exercised by the bankruptcy court.
S.Rep. No. 989, supra note 15, at 153-54, reprinted in 1978 U.S.Code Cong. & Ad.News at 5939-40.